# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MCC MANAGEMENT OF NAPLES, INC. et al., | ) ) ) |
| Plaintiffs, | ) CASE NO. 2:07-cv-387-FtM-29SPC |
| vs. | ) (For a case pending in the Middle District of Florida) ) |
| ARNOLD & PORTER, LLP; et al., | ) ) |
| Defendants. | ) ) |
| MCC MANAGEMENT OF NAPLES, INC.; et al., | ) ) ) |
| Plaintiffs, | ) CASE NO. 2:07-cv-420-FtM-29DNF |
| | ) (For a case pending in the Middle District of Florida) |
| v. | ) ) |
| ARNOLD & PORTER, LLP, et al., | ) **CASE NO. CIV-10-00433-M** ) |
| Defendants. | ) |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION OF NON- PARTIES TO QUASH SUBPOENAS ISSUED TO MICHAEL R. FORD AND TOM TRAVIS FOR MAY 19 AND MAY 20, 2010

Defendants and Third-Party Plaintiffs, International Bancshares Corporation and International Bank of Commerce (collectively, "IBC"), submit this reply in support of their Motion of Non-Parties to Quash Subpoenas Issued to Michael R. Ford and Tom Travis for May 19 and May 20, 2010. [Dkt. #1].

**A.   Additional Depositions Of Mr. Ford And Mr. Travis Should Not Be Allowed.**

Plaintiffs' Response to IBC's Motion to Quash is laden with inconsistencies and inaccuracies.  First, Plaintiffs argue that they need to take additional depositions of Mike

Ford and Tom Travis because their previous deposition and/or trial testimony did not sufficiently address issues in the Florida Case. More specifically, Plaintiffs argue that the issues surrounding the scope of Arnold & Porter's representation and the alleged breaches by Arnold & Porter of duties owed to Plaintiffs "were obviously not raised in the Oklahoma Case." [Dkt.# 9 at p. 13]. This assertion is untrue. Both Kent Yalowitz and Tom Dwyer, attorneys for Arnold & Porter and defendants in the Florida Case, traveled to Oklahoma City to testify live at trial regarding the scope of their representation. They were questioned *ad nauseum* about who they represented, their involvement with the tax deductions at issue, representations they made to IBC/Local, information allegedly withheld from the Colliers, and a myriad of other issues that are directly relevant (if not the central focus) of the Florida Case. In addition, Mike Ford was questioned at length at trial regarding actions or statements made by attorneys at Arnold & Porter and their involvement with the tax deductions that serve as the basis for both lawsuits. For Plaintiffs to argue that issues directly relevant to the Florida Case were not raised and addressed at length in the Oklahoma Case is to completely misstate what actually occurred at trial.[1]

Second, Plaintiffs argue that IBC's counsel has "flip-flopped" on their position with respect to an additional deposition of Mike Ford in the Florida Case. This is also not true. As evidenced by the very testimony attached to Plaintiffs' Response [Dkt. # 9 at

---

[1] Florida counsel (specifically Terry Moore and Jacqueline Caldwell of the Krugliak Wilkins firm and Carl Joseph Coleman of the Fowler White Firm) also represented Plaintiffs in the Oklahoma Case and attended most, if not all, of the Oklahoma trial. They are certainly fully aware of the issues that were raised at trial in the Oklahoma Case.

Ex. 3], IBC has continuously expressed its concern regarding repeated attempts to depose Mr. Ford and the length of his deposition. At various times during Mr. Ford's Florida deposition, Mr. Donelson, counsel for Mr. Ford and for IBC, expressed his intent to take up the issue of remaining deposition time with the Court. IBC has always been interested in protecting Mr. Ford (or any other witnesses) from unduly burdensome, oppressive, and/or harassing discovery tactics, and Mr. Donelson's statements to opposing counsel at Mr. Ford's August 19, 2009 deposition regarding the total time Mr. Ford could be deposed in the Florida case reflect this position.

In addition, even assuming that IBC has somehow altered its position with respect to Mr. Ford's deposition since the fall of 2009, which IBC does not concede, further discovery from Mr. Ford is simply not needed because of the exhaustive trial testimony given by Mr. Ford in the Oklahoma Case since that time. Mr. Ford was on the stand for an entire day, and his testimony covered the entire gambit of issues in both the Florida and the Oklahoma Case. He has provided well in excess of fifteen (15) hours of sworn testimony on any and all relevant issues of which he has personal knowledge, and the extent of his knowledge has undoubtedly been exhausted. Plaintiffs cannot argue that there is some element of surprise with respect to what Mr. Ford will testify to at the Florida trial, and he should not be subjected to any more questioning by Plaintiffs' counsel. At some point, enough is enough. Mr. Ford has agreed to appear live at trial, and any questions Plaintiffs have of Mr. Ford can be asked of him at that time (and all of his previous testimony can be used for impeachment, should his testimony differ in some fashion).

The same argument applies with equal force to Plaintiffs' request for an additional deposition of Tom Travis. Tom Travis is the CEO of IBC's Oklahoma operations. IBC acquired Local Financial Corporation ("Local") in 2004, after all of the tax deductions at issue had been taken. Mr. Travis's knowledge in this case is essentially limited to IBC's due diligence and acquisition of Local, as well as communications he had with Kristy Carver, the previous Director of Corporate Tax of IBC. Plaintiffs are well aware that Mr. Travis had very limited, if any, involvement with Arnold & Porter. His knowledge regarding any alleged malpractice committed by Arnold & Porter's attorneys, to the extent he has any, was thoroughly exhausted in both his Oklahoma deposition and trial testimony. Mr. Travis is a corporate executive who attended every single day of a nearly month-long trial and has already given well over ten (10) total hours of testimony. Mr. Travis has no new or additional testimony to add to their case. Plaintiffs have noticed Mr. Travis for a deposition merely for purposes of harassment and annoyance, and such tactics should not be permitted.

**B.**     **Plaintiffs' Positions Are Inconsistent With Respect To Oklahoma Testimony.**

With regard to use of Oklahoma deposition or trial testimony, it is Plaintiffs who have flip-flopped, not IBC. Following trial of the Oklahoma Case, Plaintiffs filed their Bill of Costs requesting the Clerk to tax IBC for costs totaling $195,551.84 [Dkts. #360, #361]. A significant portion of this amount, ($32,544.19) includes costs incurred for depositions taken and witnesses fees incurred with respect to depositions taken in the Florida Case. The Clerk awarded Plaintiffs all of these costs, despite IBC repeated

4

objections to the contrary, and an appeal of the Clerk's order on this issue is currently pending before the Court. [Dkt. #382 in the Oklahoma Case].

Interestingly, Plaintiffs' position with regard to the use of depositions and trial testimony from the Oklahoma Case is strikingly similar to the arguments advanced by IBC in its pleadings objecting to and appealing from Plaintiffs' Bill of Costs. It is IBC's position that it should not have been taxed for costs associated with any Florida depositions because it is not a party to the Florida Case, was not allowed to participate in those depositions, and the majority of the it time did not even have counsel in attendance at those depositions. Put simply, IBC should not have been taxed for deposition costs incurred <u>in another case</u>. Plaintiffs argued, however, that because IBC (and Plaintiffs) relied on certain Florida depositions to impeach witnesses or as support in certain motions in the Oklahoma Case, IBC should be taxed for all costs incurred with taking such depositions. The Clerk agreed. Now, Plaintiffs have apparently done a complete about-face, taking the position that they cannot rely on Oklahoma deposition or trial testimony in the Florida Case and that such testimony "has no significance and is irrelevant for purposes of the Florida Case." [Dkt. #9 at p. 9].

The doctrine of judicial estoppel prohibits Plaintiffs from taking inconsistent positions when it is convenient for them to do so. *See Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988) ("Courts have used a variety of metaphors to describe the doctrine [of judicial estoppel], characterizing it as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or having one's cake and eating it too.") (emphasis added, internal quotes omitted); *In re Riazuddin*, 363 B.R. 177, 185 (10th Cir.

5

2007) ("Judicial estoppel is an equitable doctrine designed to protect the integrity of the court system."); *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (the doctrine of judicial estoppel parties from "deliberately changing positions according to exigencies of the moment."). In other words, the doctrine "prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. Western Missouri Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998); *see also Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 2154, n. 8, 147 L.Ed.2d 164 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *see also Wagoner Co. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 625 F.Supp.2d 1162 (N.D. Okla. 2008) (same).

While judicial estoppel is "probably not reducible to any general formulation of principle," *U.S. v. Villagrana-Flores*, 467 F.3d 1269, 1278 (10th Cir. 2006), the Tenth Circuit has adopted the following factors as useful tools in determining whether the doctrine should be applied: (1) the party's later position is clearly inconsistent with his earlier position; (2) the party has succeeded in persuading a court to accept the earlier position, so as to create *the perception* that either the first or second court was mislead; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if he were not estopped. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (emphasis added) (citing *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

Here, Plaintiffs' positions are wholly inconsistent. Plaintiffs (who are represented by the same counsel in both cases) cannot argue on the one hand that a non-party to the

Florida Case can be held responsible for all costs associated with the Florida depositions because they were "necessary" to the Oklahoma Case, and then at the same time argue that the Oklahoma depositions are completely insufficient and irrelevant for purposes of the Florida Case. Plaintiffs are attempting to distance themselves from all Oklahoma-related testimony because they are seeking additional depositions of Mr. Ford and Mr. Travis, yet they embraced the "necessity" of the Florida depositions in the Oklahoma Case when they sought (and were awarded) tens of thousands of dollars of costs from IBC. Put simply, Plaintiffs are talking out of both sides of their mouths. They are changing their position because it is convenient for them to do so, and they have requested additional depositions of Mr. Ford and Mr. Travis despite the significant amount of sworn testimony already given by these gentlemen. To require them to endure yet another deposition would be to impose an undue and unnecessary burden.

For the foregoing reasons, and for those set forth in their Motion, non-parties International Bancshares Corporation and International Bank of Commerce respectfully request that this Court enter an Order quashing the Subpoenas issued to Michael R. Ford an Tom Travis, or in the alternative, limiting the time in which these individuals can each be deposed to a total of two (2) hours each (one (1) hour for Plaintiffs and one (1) hour for Defendants). Such a limitation would ensure that the attorneys taking the depositions would truly focus on matters not heretofore covered in prior deposition or trial testimony.

                                                   s/ Kevin R. Donelson
Kevin R. Donelson, OBA No. 12647
Amy Elizabeth Davies, OBA No. 20887
FELLERS, SNIDER, BLANKENSHIP,
    BAILEY & TIPPENS
100 North Broadway, Suite 1700
Oklahoma City, OK 73102-8820
Telephone:  (405) 232-0621
Facsimile:  (405) 232-9659
Email: kdonelson@fellerssnider.com
       ldavies@fellerssnider.com

*Attorneys for Non-Parties International Bancshares Corporation and International Bank of Commerce*

## CERTIFICATE OF SERVICE

☒   I hereby certify that on May 11, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for (1) filing and (2) transmittal of a Notice of Electronic Filing to the following ECF registrants:  Kurt M. Rupert and Drew C. Neville.

☒   I also hereby certify that I served the attached document by regular U.S. Mail, postage prepaid, on the following, who are not registered participants of the ECF System:

Terry A. Moore, Esq.
Jacqueline Bollas Caldwell, Esq.
Krugliak, Wilkins, Griffith & Dougherty
P.O. Box 36963
Canton, OH 44735-6963

Richard H. Critchlow, Esq.
Elizabeth B. Honkonen, Esq.
Kenny Nachwalters, PA
201 S. Biscayne Blvd., Ste. 1100
Miami, FL 33131-4327

Carl Joseph Coleman, Esq.
David C. Potter, Esq.
Fowler White Boggs, P.A.
P.O. Box 1567
Fort Myers, FL 33901

                                                   s/ Kevin R. Donelson
                                                   Kevin R. Donelson

526833.1/32091